**[J-16-2015]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


COMMONWEALTH OF PENNSYLVANIA, : No. 111 MAP 2014
:
     Appellant : Appeal from the Order of the Superior
: Court dated January 15, 2014,
: Reconsideration Denied March 27, 2014,
     v. : at No. 91 EDA 2013 Affirming the Order of
: the Court of Common Pleas of Monroe
: County, Criminal Division, at No. CP-45-
TIFFANY LEE BARNES, : CR-1473-2012 dated December 5, 2012.
:
     Appellee : ARGUED: March 11, 2015
:


**DISSENTING STATEMENT**


**MR. JUSTICE STEVENS**            **FILED: August 25, 2015**

At stake in this case is the safety of the public as well as the safety of police officers who pull over a vehicle. By activating overhead lights behind a pulled over vehicle, the driver is alerted that there is a law enforcement officer behind them and passing motorists are alerted there is a police officer and stopped vehicles alongside the road. Moreover, if this Court establishes a rule of law preventing or discouraging police officers from activating overhead lights in a vehicle stop, how does the police officer signal the driver to pull over?

Any driver, in this case a female driving alone, on a deserted highway in the early morning hours would be alarmed to have a vehicle pull up behind them not knowing whether it is a police officer or a random person who might have criminal activity in mind.

I would specifically hold that a police officer activating emergency lights on a police vehicle does not turn a mere encounter into an investigative detention. Thus, I would reverse the decision of the Superior Court.

The Court summarily affirms, without opinion, the Superior Court's determination that the suppression court properly granted Appellee Tiffany Lee Barnes relief after finding she was subjected to an unlawful investigative detention when Trooper Jason Rogowski approached Appellee's stationary vehicle and activated the overhead lights on his patrol car. By not issuing an opinion, this Court does not give guidance to the lower courts as to how in this case the encounter ripened into an investigative detention nor does it give guidance to the lower courts or to members of law enforcement as to what standard applies to any case in which police emergency lights are activated. Because I believe the lower courts failed to objectively review the totality of the circumstances and ignored the relevant policy consideration of the protection of both the driver and officer in a late night interaction in an unlit location, I respectfully dissent as I conclude Trooper Rogowski lawfully and appropriately initiated a mere encounter that required no suspicion of criminal activity.

The relevant facts are not in dispute. On March 18, 2012, at approximately 3:00 a.m., Trooper Rogowski was traveling on Route 447 in Monroe County in his patrol car when he observed a Jeep Liberty turn onto Fawn Road, immediately pull off to the side of the road, and turn off all of its lights. The driver parked on a gravel area between two car dealerships that were closed for business given the early hour. In deciding to check on the vehicle's occupant, Trooper Rogowski had dual suspicions that the driver was either experiencing vehicle failure or was about to engage in criminal activity due to the time and the vehicle's proximity to the closed dealerships.

Trooper Rogowski pulled behind the stationary vehicle and turned on his overhead lights. As Trooper Rogowski approached on foot, Appellee began to open her driver's door to exit her vehicle. Once Trooper Rogowski began speaking with Appellee, he immediately detected a strong odor of alcohol emanating from her vehicle and noticed her slurred speech and bloodshot eyes. Appellee consented to sobriety testing, which she failed. After Trooper Rogowski arrested for Driving Under the Influence (DUI), Appellee submitted to a blood test, which revealed her BAC was 0.22%.

Charged with DUI and summary traffic violations, Appellee filed a suppression motion arguing that Trooper Rogowski had subjected her to an unlawful seizure by conducting an investigative detention unsupported by reasonable suspicion of criminal activity. After a hearing, the suppression court granted Appellee's motion and dismissed all the charges.[1] Acknowledging that Trooper Rogowski's activation of his overhead lights was not sufficient itself to show a seizure had occurred, the suppression court found that two circumstances "weighed heavily in favor of finding an investigatory detention": (1) Trooper Rogowski was motivated in part by his suspicion that Appellee was about to engage in criminal activity and (2) both Trooper Rogowski and Appellee expressed their beliefs that Appellee was not free to leave. In addition, the suppression court found Trooper Rogowski had no objective reason to believe Appellee needed aid as she did not drive slowly or activate her hazard lights. Upon determining that Trooper Rogowski had initiated an investigative detention, the suppression court further concluded that he did not have reasonable suspicion to justify this seizure.

---

[1] While Appellee was charged with a traffic violation under 75 Pa.C.S. § 4305 ("Failure to Turn on Vehicular Hazard Signals"), Trooper Rogowski admitted that Appellee had not violated this section, which only requires a driver to activate hazard signals on a "highway," whereas Appellee parked on a gravel area to the side of the road.

On appeal, the Superior Court affirmed the suppression court's decision to grant Appellee's motion. In concluding that Trooper Rogowski's interaction with Appellee constituted an investigative detention, the Superior Court focused on the fact that Trooper Rogowski admitted he suspected Appellee may have had a criminal purpose for stopping her vehicle and emphasized Trooper Rogowski and Appellee's subjective opinions that Appellee was not free to leave. Moreover, the Superior Court determined that the suppression court correctly found that Trooper Rogowski did not have reasonable suspicion to support an investigative detention as he did not offer any specific observations which would allow him to reasonably conclude that criminal activity was afoot.

This Court granted the Commonwealth's petition for allowance of appeal, limiting review to the question of whether the lower courts erroneously concluded that the interaction between Trooper Rogowski was an investigative detention, requiring reasonable suspicion, as opposed to a mere encounter, requiring no suspicion at all. While appellate review of the grant of a suppression motion requires deference to the suppression court's findings of fact as long as they are supported by the record, the suppression court's legal conclusions are reviewed de novo. Commonwealth v. James, 620 Pa. 465, 475, 69 A.3d 180, 186 (2013).

To determine whether a citizen has been subject to an unreasonable seizure in violation of the Fourth Amendment, we analyze three categories of interactions between citizens and the police:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest.

Finally, an arrest or "custodial detention" must be supported by probable cause.

Commonwealth v. Reid, 571 Pa. 1, 26, 811 A.2d 530, 544-45 (2002) (citation omitted).

This Court and the United States Supreme Court have consistently held that officers do not violate the Fourth Amendment by merely approaching an individual in a public place and asking the individual questions or requesting identification. Florida v. Bostick, 501 U.S. 429, 434 (1991) ("mere police questioning does not constitute a seizure"); Terry v. Ohio, 392 U.S. 1, 34, n. 16 (1968) (White, J., concurring) (not every encounter between police officers and citizens amounts to a seizure; "there is nothing in the [federal Constitution] which prevents a policeman from addressing questions to anyone on the streets"). In distinguishing a mere encounter from an investigative detention, the suppression court must evaluate whether "consider[ing] all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' request or otherwise terminate the encounter." Commonwealth v. Lewis, 535 Pa. 501, 509, 636 A.2d 619, 623 (1994). "In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred." Commonwealth v. Strickler, 563 Pa. 47, 59, 757 A.2d 884, 890 (2000).

Before this Court, the Commonwealth reiterates its claim that the interaction between Trooper Rogowski and Appellee was a mere encounter. Relying on this Court's decision in Commonwealth v. Au, 615 Pa. 330, 339-40, 42 A.3d 1002, 1008 (2012), the Commonwealth notes that, in the scenario where an officer approaches a stationary vehicle, our courts engage in a fact-specific review of the totality of the circumstances to determine whether a reasonable person would feel not free to leave based on coercive aspects of the officer's conduct, including, but not limited to, the

restraint of liberty or movement, use of physical force, intimidating language, a show of authority, or a mandate demanding compliance.

In this case, the Commonwealth emphasizes Trooper Rogowski pulled his patrol car behind Appellee's vehicle and did not block or direct her movement in any way. The Commonwealth also points out that Trooper Rogowski did not brandish a weapon or make any intimidating statements or movements that demonstrated force. The Commonwealth contends that Trooper Rogowski's activation of his overhead lights was a non-escalatory factor furthering safety, as Trooper Rogowski explained that he turned on the lights to make his patrol car visible to approaching drivers. The Commonwealth argues Appellee should have reasonably expected that the responding trooper was approaching to offer assistance given Appellee was parked on the side of the road at a late night hour and troopers have a duty to aid motorists in need.

While the lower courts repeatedly acknowledged that suppression claims must be reviewed objectively in light of the totality of the circumstances, both the suppression court and Superior Court's opinions relied heavily on Trooper Rogowski's candid admission that, while he believed that Appellee may have needed aid for possible vehicle failure, he also suspected Appellee was engaged in criminal activity. Both courts also found critical that Trooper Rogowski and Appellee both believed that Appellee was not free to leave.

The lower courts' reliance on the parties' subjective beliefs was improper as "subjective intent is irrelevant so long as there is objective justification for the police officer's actions[.]" Strickler, 563 Pa. at 64, 757 A.2d at 893 (citing Ohio v. Robinette, 519 U.S. 33, 35 (1996) (citation omitted)). In reviewing suppression motions, the key to an objective analysis is to give due consideration to the reasonable impression given to the individual approached rather than the subjective views of the officers or the person

who has allegedly been seized. Cf. Commonwealth. v. Sherwood, 603 Pa. 92, 117, 982 A.2d 483, 499 (2009) (emphasizing the "[t]he test for custody is an objective one that focuses on the reasonable impression conveyed by the actions of the police to the person being questioned").

Absent the subjective beliefs of Trooper Rogowski and Appellee, which are impermissible considerations, the suppression court failed to establish how the encounter ripened into an investigative detention. As a seizure does not occur when an officer merely approaches an individual in public and questions the individual, it was permissible for Trooper Rogowski to approach Appellee's vehicle on the side of the road and inquire if she needed aid and to discover her purpose for pulling off at this location late at night. As noted by the Commonwealth, Trooper Rogowski did not block Appellee from leaving, direct her movement in any way, speak in an authoritative or threatening tone, or display any show of authority to restrain Appellee. When Trooper Rogowski spoke to Appellee, she immediately showed indicia of being under the influence of alcohol, as she had slurred speech, bloodshot eyes, and had a strong odor of alcohol emanating from her vehicle, giving him reasonable suspicion to detain her to investigate whether to place her under arrest for DUI.

Thus, it appears that the only factor which arguably could have escalated the initial encounter into an unlawful investigative detention was Trooper Rogowski's activation of the overhead emergency lights on his patrol car. While the activation of overhead lights may be a factor for the suppression court to consider in determining whether a reasonable person would have felt free to leave, a totality of the circumstances review requires that no single factor should dictate the ultimate conclusion as to whether a seizure has occurred. Strickler, 563 Pa. at 59, 757 A.2d at 890.

Moreover, in the situation presented in this case, where a motorist in a stationary vehicle is approached in an unlit, remote location at an early morning hour by a responding officer, the activation of the patrol car's overhead lights furthers the safety of both the officer and the motorist. The flashing overhead lights notify oncoming drivers of the vehicles' presence on the side of the road and signal to the motorist that an officer has arrived to offer assistance. These lights help assure the motorist of safety by distinguishing between the arrival of a responding officer and an unknown vehicle of a stranger who may not have the motorist's best interests in mind. As a result, in many circumstances, citizens come to recognize the activation of a patrol car's overhead lights as a reasonable response in allowing officers to meet their duty of providing assistance to stranded motorists or drivers that otherwise need assistance. Therefore, the activation of the patrol car's overhead lights, standing alone, did not ripen the instant mere encounter into an investigative detention.

Accordingly, when applying the suppression court's findings of fact to the established precedent governing similar claims, I find that Trooper Rogowski did not subject Appellee to an unlawful seizure, but responded appropriately in approaching her vehicle to render aid and inquiring as to her reasons for stopping at this location and hour. Accordingly, I would reverse the Superior Court's decision affirming the order granting Appellee's suppression motion, reinstate the applicable charges, and remand for further proceedings.